1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6                          SAN JOSE DIVISION
7

8   PERSONALWEB TECHNOLOGIES LLC,          Case No.  16-cv-01266-EJD
    et al.,
9                Plaintiffs,              **ORDER DENYING DEFENDANT'S
                                          MOTION TO DISMISS; GRANTING IN
10        v.                              PART AND DENYING IN PART
                                          DEFENDANT'S MOTION FOR
11  INTERNATIONAL BUSINESS                PARTIAL SUMMARY JUDGMENT**
    MACHINES CORPORATION,
12                                        Re: Dkt. Nos. 212, 218
                 Defendant.
13

14        Plaintiffs PersonalWeb Technologies LLC ("PersonalWeb") and Level 3 Communications,

15  LLC ("Level 3") (collectively, "Plaintiffs") bring the instant action for patent infringement against

16  Defendant International Business Machines Corporation ("IBM" or "Defendant").  Presently

17  before the Court are two motions filed by IBM:  IBM's Motion for to Dismiss (Dkt. No. 212) and

18  IBM's Motion for Summary Judgment (Dkt. No. 218).  Having carefully considered the moving,

19  opposing, and reply papers for both motions as well as the arguments of counsel from the hearing

20  on these matters, the Court DENIES IBM's Motion to Dismiss and GRANTS IN PART and

21  DENIES IN PART IBM's Motion for Summary Judgment.

22  I.    BACKGROUND

23        A.    Factual Background

24        PersonalWeb is a limited liability company organized under the laws of Texas with its

25  principal place of business in Tyler, Texas.  Dkt. No. 29 ¶ 4.  Level 3 is a limited liability

26  company organized under the laws of Delaware with its principle place of business in Broomfield,

27                                        1

United States District Court
Northern District of California

Colorado. *Id*. ¶ 5. IBM is a New York corporation with its principal executive offices at Armonk, New York. *Id*. ¶ 7. PersonalWeb and Level 3 each own a fifty percent (50%) undivided interest in U.S. Patent No. 8,099,420 (the "'420 patent"). *Id*. ¶ 1. IBM is a technology company which makes software and storage products, including the Tivoli Storage Manager ("TSM"). *Id*. ¶¶ 8-9.

### i. The Asserted Patent

The '420 patent relates to "data processing systems wherein data items are identified by substantially unique identifiers which depend on all of the data in the data items and only on the data in the data items." '420 patent, col. 1 ll. 20-22. The '420 patent belongs to a chain of several continuation and divisional patent applications, the earliest of which was filed on April 11, 1995. The '420 patent expired on April 11, 2015.

Currently at issue is claim 166, which recites:

> 166. A system comprising hardware, including at least a processor, and software, in combination with said hardware to:
>
> > (A) for a particular data item in a set of data items, said particular data item comprising a corresponding particular sequence of bits:
> >
> > > (a1) determine one or more content-dependent digital identifiers for said particular data item, each said content-dependent digital identifier being based at least in part on a given function of at least some of the bits in the particular sequence of bits of the particular data item, wherein two identical data items will have the same digital identifiers as determined using said given function; and
> > >
> > > (a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without authorization, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database corresponding to at least one data item of a plurality of data items, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item.

'420 patent, col. 56 l. 51-col. 57 l. 13.

### ii. The Accused Product

PersonalWeb currently asserts claim 166 against a single product: TSM. TSM is a data storage, back-up, and recovery product sold by IBM. *See* Dkt. No. 217-4, Joint Statement of

Undisputed Facts ("JSUF"), ¶¶ 37-38.  IBM touts TSM as currently "support[ing] organizations ranging from small businesses to large enterprises."  Dkt. 232-1, Declaration of Benjamin J. Christoff in Support of PersonalWeb's Opposition to IBM's Motion for Summary Judgment ("Christoff MSJ Decl."), Ex. 5 at 9.  Customers can download the TSM software suite from IBM using a website called Passport Advantage.  JSUF ¶ 40.  TSM can be deployed in a wide variety of complex environments, including "virtual, physical, and cloud environments."  Dkt. No. 218-1, Declaration of Kenneth R. Adamo in Support of IBM's Motion for Summary Judgment ("Adamo MSJ Decl."), Ex. 7 at 10.

TSM includes "client-side deduplication" and "server-side deduplication" features which help prevent duplicate copies of the same data from being backed up.  JSUF ¶¶ 44-45.  At a high level, this works by calculating hash values on chunks of data and then using those hash values to determine if that data has already been backed up.  *See* Christoff MSJ Decl., Ex. 3 at 40-42.  "Server-side deduplication" has been included in TSM versions 6.1 and later.  JSUF ¶ 44.  "Client-side deduplication" has been included in TSM versions 6.2 and later.  JSUF ¶ 45.

### iii.   Licensing History

Over the years, the '420 patent (as well as other patents not at issue here) has been part of several acquisitions and patent licensing agreements.  Several are relevant here:

On June 12, 1996, the original assignee of the '420 patent, Kinetech, Inc. ("Kinetech"), entered into a Technology Transfer Agreement ("TTA") with Connected Corporation ("Connected").  Dkt. 212-1, Declaration of Kenneth R. Adamo in Support of IBM's Motion to Dismiss ("Adamo MTD Decl."), Ex. 5.  The TTA granted an exclusive, field of use license to Connected, reciting:

> On the terms and subject to the conditions set forth in this Agreement, Kinetech grants to Connected, and Connected accepts, a perpetual, exclusive, worldwide, transferable (subject to Section 4) right and license to make, sell, use and sublicense the Invention under the Patent Application, but such license is limited solely for the purposes of developing and operating value-added, online backup and file recovery products and services, and Kinetech further grants to Connected, and Connected accepts, a perpetual nonexclusive, world-wide right and license to use and sublicense the Invention under the Patent Application, but such license is limited solely for purposes of developing and operating value-added online remote desktop system configuration management products and services (collectively, the "Licensed Use"). . . .  In addition, Connected shall not during the pendency of the

3

> Patent Application and the life of any related patent use the Invention in any manner outside of the Licensed Use and Kinetech reserves all other rights not expressly granted to Connected hereunder.

*Id.* at 2 (TTA § 2.1). The TAA defined the "Patent Application" as U.S. Patent Application No. 08/425,160 (the "'160 application") "including any . . . subsequently issued patent or patents and all divisions, continuations, continuations-in-part, and reissues thereof." *Id.* at 1. The '420 patent is a continuation of an application which is a continuation of the '160 application. '420 patent.

The TTA also granted to Connected "the right, at its own expense, to prosecute any infringer who is infringing on the Licensed Use or the Software and any recovery in connection therewith shall be the property of Connected." *Id.* at 7 (TTA § 2.7.4). However, it also provided that

> Kinetech shall have the right to join in the prosecution of any claims referred to in the foregoing sentence, provided that Kinetech shall bear its own costs and expenses, including the cost of any separate counsel, and provided, further, that in the event Kinetech wishes to join in the prosecution of such claims without engaging separate counsel, Kinetech shall share equally with Connected the cost of prosecuting any such claims. Each party shall cooperate with the other in connection with any infringement suits or claims involving the Invention or the Software.

*Id.*

In 1999, IBM and the Hewlett-Packard Company ("HP") entered into a cross-license that granted to IBM ███████████████████████████████████████████ ████████████████████████ Adamo MTD Decl., Ex. 8 at 3 (Cross-License § 2.1(a)). ████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ *Id.* at 2 (Cross-License § 1.5(b)).

On September 1, 2000, Kinetech entered into an agreement with Digital Island, Inc. ("Digital Island") in which Kinetech assigned a 50% undivided interest in the '420 patent[1] to Digital Island. Adamo MTD Decl., Ex. 1. Digital Island assigned its 50% undivided interest to

---

[1] More specifically, the agreement assigned a 50% undivided interest in U.S. Patent No. 5,978,791 "and all counterpart applications, including continuation applications, divisional applications, reexamination or reissue applications or extensions thereof." Adamo MTD Decl., Ex. 1 at 1. The '420 patent is a continuation of U.S. Patent No. 6,928,442, which is a continuation of U.S. Patent No. 6,415,280, which is a division of U.S. Patent No. 5,978,791. '420 patent.

Savvis Asset Holdings, Inc. on February 13, 2004, which then assigned its interest to Mount

Shasta Acquisition, LLC on January 22, 2007, which merged with Level 3 that same day. Adamo

MTD Decl., Exs. 2, 3. On July 5, 2011, Kinetech assigned its own 50% undivided interest the

'420 patent to PersonalWeb. Adamo MTD Decl., Ex. 4.

Meanwhile, the rights granted under the TTA changed hands several times. In November

2004, Iron Mountain, Inc. ("IM") acquired Connected, including the TTA. Adamo MTD Decl..

Ex. 6 at 1. In May 2011, Autonomy, Inc. ("Autonomy") purchased the digital assets of IM,

including the TTA. *Id*. at 2. In October 2011, HP acquired Autonomy, including the TTA.

Adamo MTD Decl.. Ex. 7 at 1.

In August 2012, PersonalWeb initiated an arbitration against IM, alleging material breach

of the TTA and related claims. Adamo MTD Decl.. Ex. 6 at 2. The arbitration ended in a

settlement agreement between PersonalWeb, IM, Autonomy, and HP, dated May 19, 2014, in

which IM, Autonomy, and HP agreed to "transfer and assign to PersonalWeb[] the TTA and any

license rights included therein." *Id*. at 9 (Settlement Agreement § 5.1.1). Thus, as of May 19,

2014, PersonalWeb not only held a 50% undivided interest in the '420 patent, but also obtained

the exclusive field of use license granted under the TTA. *See id*.

### B. Procedural History

Meanwhile, on September 17, 2012, Plaintiffs (PersonalWeb and Level 3) initiated the

instant lawsuit in the Eastern District of Texas, claiming that IBM infringed the '420 patent, as

well as U.S. Patent Nos. 5,978,791 (the "'791 patent"); 6,415,280 (the "'280 patent"); 6,928,442

(the "'442 patent"); and 7,802,310 (the "'310 patent"). Dkt. No. 1. On September 3, 2013,

Plaintiffs amended their Complaint to additionally accuse IBM of infringing U.S. Patent Nos.

7,945,539 (the "'539 patent"); 7,945,544 (the "'544 patent"); 7,949,662 (the "'662 patent"); and

8,001,096 (the "'096 patent").[2] Dkt. No. 29 ¶¶ 1, 48. The Amended Complaint identified TSM,

as well as eight other IBM products,[3] as infringing each of the nine Originally Asserted Patents.

---

[2] Hereinafter, the Court will refer to the '420, '791, '280, '442, '539, '544, '662, and '096 patents
collectively as the "Originally Asserted Patents."
[3] Specifically, the accused products named were: (1) IBM Content Management CommonStore,
(2) TSM, (3) the IBM Lucene Search Engine, (4) IBM Solr, (5) IBM ISS products and services,

*Id.* at ¶¶ 1, 9.

PersonalWeb[4] served Infringement Contentions on June 28, 2013, identifying seven of the Originally Accused Products[5] as infringing five of the Originally Asserted Patents.[6] Adamo MSJ Decl. Exs. 1-2. PersonalWeb supplemented its Infringement Contentions on November 19, 2013, adding accused products and modifying the list of asserted claims. Adamo MSJ Decl. Exs. 3-4.

On March 11, 2016, Judge Gilstrap in the Eastern District of Texas issued a claim construction order. Dkt. No. 103. Four days later, Judge Gilstrap transferred this case to this district. Dkt. No. 107.

On May 31, 2016, PersonalWeb sought leave in this district to amend its Infringement Contentions to (1) make clarifying changes related to certain terms that were construed by Judge Gilstrap, (2) add an accused product, and (3) add claims asserted against TSM. Dkt. No. 139. Magistrate Judge Cousins granted PersonalWeb's first request, but denied the remaining two. Dkt. No. 160. PersonalWeb served amended infringement contentions pursuant to Judge Cousins's order on August 11, 2016. Dkt. Nos. 189-3, 188-6.

That fall, the parties took steps to narrow the case. In a letter dated September 4, 2016, PersonalWeb agreed to limit the accused products to TSM and CommonStore. JSUF ¶ 26. In an email dated October 19, 2016, PersonalWeb stated that it would not pursue infringement claims against CommonStore. JSUF ¶ 27. Fact discovery closed on December 6, 2016. Dkt. Nos. 165, 175, 176. On December 9, 2016, PersonalWeb served an expert report on infringement, in which it only covered infringement of claim 166 of the '420 patent by TSM. Adamo MSJ Decl., Ex. 5. Expert discovery closed on February 24, 2017. Dkt. Nos. 165, 208.

---

(6) IBM SQL Extension Toolkit for the Netezza platform, (7) IBM Softlayer Technologies Cloud Storage products and services, and (8) ProtecTIER. Dkt. No. 29. Hereinafter, the Court will refer to all eight products collectively as the "Originally Accused Products."

[4] Only PersonalWeb is identified in the title, text, and signature block of these contentions. Adamo MSJ Decl. Ex. 1. Thus, only PersonalWeb served infringement contentions against IBM. This is consistent with IBM's representation that "Level 3 is not asserting any of its rights in the '420 patent against IBM in this case. For all intents and purposes, PersonalWeb is the sole active plaintiff." Dkt. No. 212 at 1 n.2.

[5] Specifically: (1) IBM Content Management CommonStore, (2) TSM, (3) the IBM Lucene Search Engine, (4) IBM Solr, (5) IBM ISS products and services, (6) IBM Softlayer Technologies Cloud Storage products and services, and (7) ProtecTIER. Def MSJ Ex. 3 at 1.

[6] Specifically: the '420, '791, '280, '442, and '310 patents. Def MSJ Ex. 3 at 1.

6

United States District Court
Northern District of California

Meanwhile, claims 1-3, 29 and 35 of the '791 patent and claims 1 and 10 of the '280 patent were invalidated through *inter partes* review and/or reexamination proceedings. Dkt. No. 215. The parties stipulated to dismissing these claims with prejudice, which the Court granted on March 6, 2017. Dkt. No. 219. The parties have not stipulated to dismissal of any other claims in this case.

IBM now moves to dismiss all of PersonalWeb's infringement claims for lack of prudential standing under 35 U.S.C. § 281. Dkt. No. 212. IBM also moves for partial summary judgment that (1) IBM's manufacture, sale, importation, and/or offer for sale of TSM software does not infringe claim 166 of the '420 patent; (2) TSM does not infringe claim 166 of the '420 patent under the doctrine of equivalents; (3) IBM does not indirectly or jointly infringe claim 166 of the '420 patent; (4) TSM without the "client-side deduplication" feature does not infringe claim 166 of the '420 patent; (5) the claims no longer asserted by PersonalWeb and not yet dismissed are not infringed; and (6) IBM has not willfully infringed claim 166 of the '420 patent. Dkt. No. 218.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id*. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *see Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material submitted as part of

the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### B. Federal Rule of Civil Procedure 56

A motion for summary judgment should be granted if "there is no genuine dispute to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. R. 56(c); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); *see also Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *see also Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish

United States District Court
Northern District of California

the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.    DISCUSSION

### A.    Motion to Dismiss

IBM moves to dismiss PersonalWeb's[7] infringement claims on the grounds that it did not have standing under 35 U.S.C. § 281 at the time it filed this lawsuit in September 2012.

#### i.    Legal Principles

Under § 281, only a "patentee" has standing to sue for patent infringement.  35 U.S.C. § 281.  This creates a prudential standing requirement that a plaintiff in a patent infringement action must satisfy in addition to Article III standing.  *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 897, 193 L. Ed. 2d 790 (2016).

A "patentee" may be the person to whom the patent issued, or "successors in title to the patentee."  35 U.S.C. § 100(d); *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).  "Successors in title" not only include assignees (of either the patent or an undivided interest in the patent), but also exclusive licensees when the exclusive license is "given under such terms that the license is tantamount to an assignment of the patent[] to the exclusive licensee."  *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010).  An exclusive license is "tantamount to an assignment" when it transfers "all substantial rights" in the patent.  *Id.*

The Federal Circuit has established that "a patent may not have multiple separate owners for purposes of determining standing to sue."  *Mann Found. for Scientific Research*, 604 F.3d at 1359.  Thus, in the case where a patent is subject to an exclusive license,  it is either the case that "the licensor did not transfer 'all substantial rights' to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or [that] the

_____

[7] According to IBM, "Level 3 is not asserting any of its rights in the '420 patent against IBM in this case.  For all intents and purposes, PersonalWeb is the sole active plaintiff."  Dkt. No. 212 at 1 n.2.  PersonalWeb did not disagree with (or otherwise respond to) this statement.  Accordingly, the Court construes IBM's motions as only seeking relief with respect to the claims asserted by PersonalWeb.  This Court reaches no decision as to claims which may be pending between Level 3 and IBM.

licensor did transfer 'all substantial rights' to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own." *Id.* at 1359-60. The party who possesses "all substantial rights" may sue on its own without joining the other; the party who does not possess "all substantial rights" may still sue, as long as the other is joined.[8] *See Mann Found. for Scientific Research*, 604 F.3d at 1360; *Mentor H/S, Inc.*, 240 F.3d at 1017.

To determine whether an exclusive license has transferred "all substantial rights," the Court "must ascertain the intention of the parties and examine the substance of what was granted." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). The Federal Circuit has offered the following guidance:

> [T]ransfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment. . . . We have also examined the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent. . . . Frequently, though, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration. . . . Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee.

*Mann Found. for Scientific Research*, 604 F.3d at 1360-61 (citations omitted).

In addition, and particularly relevant here, the Federal Circuit has held in several instances that exclusive licenses with field of use restrictions do not confer "all substantial rights." *Alps S.*, 787 F.3d at 1383 (field of use restriction for "prosthetic liners" in exclusive license was "fatal" to § 281 standing); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010)

---

[8] The same is not true in the case of a non-exclusive license. A nonexclusive licensee does not have standing to sue, even if the patent owner is joined. *Mann Found. For Sci. Research*, 604 F.3d at 1360 (citing *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007)) ("The first step is to determine whether the license is exclusive or nonexclusive, because AB, as the licensee, would have no right to sue, even by joining AMF, under a nonexclusive license agreement."); *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S. Ct. 334, 335, 34 L. Ed. 923 (1891)

(affirming district court finding that exclusive license was a field of use license and thus did not transfer "all substantial rights"); *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1280 (Fed. Cir. 2007) (exclusive license with a field of use restriction for "lottery games" where the patent "extend[ed] beyond that limitation" did not confer all substantial rights). This is in part because "allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Int'l Gamco*, 504 F.3d at 1278.

### ii. Application

Here, IBM argues that PersonalWeb lacks prudential standing under § 281 because, at the time PersonalWeb filed suit in September 2012, it did not hold "all substantial rights." Mot. at 7-9. IBM argues this is the case because in 1996 the TTA granted an exclusive license in the field of use of "online backup and file recovery." *Id*. Because the accused product, TSM, falls within this field, IBM contends that PersonalWeb did not have "all substantial rights" to assert the '420 patent against IBM with respect to this product in 2012. *Id*.

PersonalWeb disagrees, arguing that the TTA did not transfer "all substantial rights" because it was a limited, field-of-use license and Kinetech (PersonalWeb's predecessor in interest) still retained its 50% undivided ownership interest in the '420 patent. Opp. at 7.

The Court agrees with PersonalWeb that the TTA did not transfer "all substantial rights" to Connected (and that, instead, "all substantial rights" remained with Kinetech). The TTA is a field of use license. *See* Ex. 5 at at 2 (TTA § 2.1) (". . . but such license is limited solely for the purposes of developing and operating value-added, online backup and file recovery products and services . . ."). Thus, it falls under the "clear rule" established and followed in several Federal Circuit cases that field of use licenses do not confer "all substantial rights." *See Alps S.*, 787 F.3d at 1383; *A123 Sys.*, 626 F.3d at 1217; *Int'l Gamco*, 504 F.3d at 1280. Just as, in those cases, allowing the field of use licensee to sue in his own name would create the risk of multiple suits against an alleged infringer, here too allowing an exclusive licensee in the field of "online backup and file recovery" to sue in his own name would create the risk of multiple suits because claim 166 recites an invention that could be applied in more contexts than just "online backup and file

recovery." Thus, this Court finds that the Federal Circuit's conclusions that the field of use

exclusive licenses did not transfer "all substantial rights" in those cases compel the same

conclusion here.[9]

Moreover, even if this precedent were not controlling, the Court would still find, based on

other Federal Circuit guidance, that Kinetech retained "all substantial rights" after the TTA. The

Federal Circuit has observed that "[f]requently . . . the nature and scope of the exclusive licensee's

purported right to bring suit, together with the nature and scope of any right to sue purportedly

retained by the licensor, is the most important consideration" in determining whether "all

substantial rights" have been transferred. *Mann Found. for Scientific Research*, 604 F.3d at 1361.

Here, the TTA granted Connected "the right, at its own expense, to prosecute any infringer who is

infringing on the Licensed Use or the Software and any recovery in connection therewith shall be

the property of Connected." *Id*. at 7 (TTA § 2.7.4). However, "Kinetech reserve[d] all other

rights not expressly granted to Connected," including the right to sue infringers for uses other than

the "Licensed Use." *Id*. at 2 (TTA § 2.1). In addition, the TTA provided Kinetech "the right to

join in the prosecution of any claims" for infringement brought by Connected pursuant to § 2.7.4

and required the parties to "cooperate . . . with any infringement suits." *Id*. at 7 (TTA § 2.7.4).

Thus, even within cases of infringement of the TTA's "Licensed Use," Kinetech never fully lost

its ability to participate as a patent plaintiff.[10] Accordingly, given that, under the TTA, Kinetech

retained the unfettered right to sue in some instances and participate in a cooperative manner in

---

[9] The Court is cognizant that, in all of these cases, the Federal Circuit addressed the question of "all substantial rights" from the perspective of the exclusive licensee (i.e., they evaluated whether an exclusive field of use license transferred "all substantial rights" to the exclusive licensee). Nevertheless, the Court does not find these cases distinguishable on that basis. Because "a patent may not have multiple separate owners for purposes of determining standing to sue," *Mann Found. for Scientific Research*, 604 F.3d at 1359, the Federal Circuit's conclusion in these cases that the exclusive licensee did not have "all substantial rights" suggests that the patent owner did have "all substantial rights." Thus, just as with those cases, the exclusive field of use license here is not sufficient to transfer "all substantial rights" to the exclusive licensee (Connected) and instead they were retained with the patent owner (Kinetech).

[10] The Court nevertheless notes that these provisions make it such that Kinetech must rely on Connected to initiate suit. *See id*. However, the TTA also provides that "Kinetech shall promptly notify Connected in writing if it becomes aware that any person is unlawfully infringing upon the Software." *Id*. at 7 (TTA § 2.7.4). Thus, Kinetech still retained some ability to influence this aspect of pursuing infringement claims relating to the "Licensed Use."

others, the Court finds that, on balance, it retained "all substantial rights" in the '420 patent.

Other provisions in the TTA bolster this conclusion. The Federal Circuit has named a number of other considerations relevant to the question of whether an exclusive license transfers "all substantial rights," including

> the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent.

*Mann Found. for Scientific Research*, 604 F.3d at 1360-61 (citations omitted). In this case, some of these considerations weigh in favor of finding that Kinetech transferred "all substantial rights" to Connected: Connected received the proceeds from infringement suits, *id*. at 7 (TTA § 2.7.4); Connected's license was "perpetual," *id*. at 2 (TTA § 2.1); and Kinetech did not reserve the right to supervise and control Connected's use of the invention of the '420 patent, *see id*. However, a more substantial remainder of these considerations counsels in the opposite direction: the TTA granted Connected a right to sublicense, but only in the field of use, *id*. at 2 (TTA § 2.1); rights in the '420 patent reverted to Kinetech in the case of material breach, with the exception of those "reasonably necessary to perform . . . obligations existing as of the effective date of the termination," *see id*. at 6 (TTA § 2.5.1); Kinetech retained "sole control" over patent prosecution activities, as well as the responsibility for paying maintenance fees, *id*. at 3-4 (TTA §§ 2.2.1, 2.2.5); and Connected could not transfer its rights under the TTA "without the express prior written consent of Kinetech, which consent shall not be unreasonably withheld, conditioned, or delayed," *id*. at 8 (TTA § 4). Thus, the weight of these other provisions counsel in favor of finding that the TTA did not transfer "all substantial rights" to Connected. Instead, their sum total reflects a desire to only provide an isolated portion of the bundle of rights of the '420 patent to Connected, while still retaining Kinetech's status as owner of the '420 patent. Thus, for this reason as well, the Court finds that Kinetech retained "all substantial rights" in the '420 patent.

IBM's arguments to the contrary are not persuasive. IBM rests its position on a narrow

interpretation of the law on § 281 standing, arguing that the question of whether a patent owner retains "all substantial rights" should be assessed in a context-specific way: "the question is whether the plaintiff has standing to bring *this* lawsuit against *this* defendant to allege *these* claims," IBM argues.  Reply at 2.  This, however, is not the law on § 281 standing.  Instead, in assessing the question of whether an exclusive license has conferred "all substantial rights," the Federal Circuit has focused on the grant within the license itself, not the context in which rights extending from the license have been asserted.  *See, e.g.*, *Alps S.*, 787 F.3d at 1383-84 (examining entire set of rights granted under exclusive license, without regard to subject matter of accused products); *Mann Found. for Scientific Research*, 604 F.3d at 1361-63 (same).  This makes sense given that "[a] patent 'is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part.'"  *Id.* at 1360 (citing *Vaupel Textilmaschinen*, 944 F.2d at 875).  Whether a particular bundle constitutes "'all substantial rights' in the patent[]," *id*. at 1359, does not change based on the way the bundle is used.  This also comports with the Federal Circuit's approach to field of use licenses.  As discussed above, the Federal Circuit has generally declined to find that field of use licenses confer "all substantial rights" because "allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement."  *Int'l Gamco*, 504 F.3d at 1278.  Assessing "all substantial rights" in a context-dependent way would invite precisely this harm, as it would allow multiple exclusive, field of use licensees to sue the same accused infringer if it sold a multi-featured product that covered several fields.  This cannot be.

   *Bluestone Innovations LLC v. Nichia Corp.*, No. C 12-00059 SI, 2013 WL 1729814 (N.D. Cal. Apr. 22, 2013), the sole case that IBM cites in support of its position, does not compel a contrary conclusion.  It is true that that case involved an exclusive license with a field of use restriction.  However, in that case, the patent owner had also covenanted not to sue in the field of use, and had also conceded that the exclusive licensee "ha[d] the sole right to sue [in the field of use]."  *Id*. at *4 n.1.  The court adhered to these concessions, *see id*. at *4 ("After Bluestone's concessions . . ."), and thus never decided in the first instance whether the exclusive license with

14

the field of use restriction "transferred all substantial rights." Thus, this case is distinguishable.

For the foregoing reasons, the TTA did not transfer "all substantial rights" in the '420 patent to Connected. Instead, they remained with Kinetech. Accordingly, when PersonalWeb acquired what originally was Kinetech's 50% undivided ownership interest in the '420 patent on July 5, 2011, PersonalWeb received "all substantial rights" in the '420 patent. From that point forward, including when it initiated this lawsuit in September 2012, PersonalWeb was the "patentee" under § 281.[11] Thus, it had (and still has) standing to sue. For this reason, IBM's motion to dismiss is DENIED.

## B. Motion for Summary Judgment

IBM moves for partial summary judgment that (1) IBM's manufacture, sale, importation, and/or offer for sale of TSM software does not infringe claim 166 of the '420 patent; (2) TSM does not infringe claim 166 of the '420 patent under the doctrine of equivalents; (3) IBM does not indirectly or jointly infringe claim 166 of the '420 patent; (4) TSM without the "client-side deduplication" feature does not infringe claim 166 of the '420 patent; (5) the claims no longer asserted by PersonalWeb and not yet dismissed are not infringed; and (6) IBM has not willfully infringed claim 166 of the '420 patent.[12]

### i. Infringement through IBM's Manufacture, Sale, Importation, and/or Offer for Sale of TSM Software

IBM moves for partial summary judgment that it does not infringe claim 166 of the '420 patent through its manufacture, sale, importation, or offering for sale of "TSM software."[13] Mot. at 7-9. Because IBM's motion only asks for partial summary judgment with respect to "TSM

---

[11] Because PersonalWeb, not the holder of the TTA's exclusive field of use license, was the "patentee" under § 281 at the time this suit was filed in September 2012, this Court need not reach the parties' arguments about whether PersonalWeb cured defects in its § 281 standing when it acquired rights under the TTA in the May 29, 2014 Settlement Agreement.

[12] As discussed above, IBM represents that "Level 3 is not asserting any of its rights in the '420 patent against IBM in this case. For all intents and purposes, PersonalWeb is the sole active plaintiff." Dkt. No. 212 at 1 n.2. PersonalWeb did not disagree with (or otherwise respond to) this statement. Accordingly, the Court construes IBM's motions as only seeking relief with respect to the claims asserted by PersonalWeb. This Court reaches no decision as to claims which may be pending between Level 3 and IBM.

[13] IBM does not move for summary judgment that its own use of TSM software does not infringe the '420 patent. Mot. at 7 n.52.

United States District Court
Northern District of California

software," the Court construes IBM's motion as only asking for summary judgment with respect to IBM's acts of making, selling, importing, and offering to sell TSM software, as opposed to combinations of TSM software and hardware running that software that IBM may also provide to its customers. Whether these software and hardware combinations are also "TSM" as accused in PersonalWeb's Amended Complaint and whether they directly infringe claim 166 under § 271(a) are questions this Court does not reach.

In its motion, IBM argues that it is entitled to summary judgment because "TSM software" is only software and claim 166 requires "hardware." Mot. at 7-8. The word "hardware" appears in only the first portion of claim 166, which recites:

> 166. A system comprising *hardware*, including at least a processor, and software, in combination with said *hardware* to:

'420 patent, col. 56 ll. 51-53 (emphasis added). According to IBM, "hardware" is a meaningful, structural limitation in claim 166 because the preamble of claim 166 ends after "comprising" and thus, "hardware" appears in the body of the claim. *Id*. at 8. IBM alternatively argues that, even if the preamble of claim 166 extends to the colon (and thus, "hardware" was part of the preamble), "hardware" still meaningfully limits the scope of the claim because the preamble as such is limiting. *Id*. at 8-9.

PersonalWeb offers several responses to IBM's noninfringement theory. First, PersonalWeb argues that IBM waived this interpretation of "hardware" by not raising it at claim construction. Second, PersonalWeb argues that "hardware" is not a meaningful limitation because it appears in a non-limiting preamble. According to PersonalWeb, the preamble of claim 166 ends at the colon, and the preamble is not limiting because it falls within the Federal Circuit line of cases finding preambles not limiting where (1) they only describe how the apparatus will be used, (2) the preamble does not affect the structure or steps of the claimed invention, and/or (3) they do not "provide antecedent basis for and are necessary to understand positive limitations" for any limitations in the body of the claims. Opp. at 7-11. Third, PersonalWeb argues that, even if the Court were to find the preamble limiting, the phrase "hardware" only limits the environment in which the rest of the claim operates and does not require that there be physical, hardware

components. *Id*. at 11-13. Finally, PersonalWeb argues that, even if the Court were to find the preamble limiting and that it imposed the structural requirement that covered embodiments must include "hardware," summary judgment is still inappropriate because there are material factual disputes about whether TSM infringes claim 166. *Id*. at 13-16.

The Court first addresses IBM's and PersonalWeb's arguments about whether and the extent to which "hardware" limits claim 166, and then addresses whether, under the proper interpretation, summary judgment is warranted.

### a. The "Hardware" Requirement

The parties dispute several things: (1) waiver; (2) what constitutes the preamble of claim 166; (3) whether that preamble is limiting; and (4) if the preamble is limiting, whether it limits structure or only the environment in which the remaining limitations operate. The Court addresses each in turn.

On the first issue, the Court declines to find waiver. Although questions of what constitutes the preamble and whether the preamble is limiting are claim construction issues that IBM could have and should have raised at Markman, this does not necessarily preclude IBM from raising them now. Waiver is a discretionary doctrine, and "a district court may engage in claim construction during various phases of litigation." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006). Here, the Court finds that PersonalWeb had sufficient notice that "hardware" may be a meaningful term, as it addressed this limitation in both its infringement contentions and its expert report. *See* Adamo MSJ Decl., Ex. 2 at 1-2, Ex. 4 at 1-3; Christoff MSJ Decl., Ex. 5 at 56-59; Dkt. No. 188-6 at 1-2. Thus, the Court declines to find that IBM waived this argument.

Turning to the second issue, the Court agrees with PersonalWeb that the preamble of claim 166 ends at the colon. The Court is unpersuaded that, under Federal Circuit law, either the colon (as PersonalWeb argues) or the word "comprising" (as IBM argues) serves as a bright-line delimiter for where the preamble ends and the body of the claim begins.[14] Nevertheless, reading

---

[14] Specifically, contrary to PersonalWeb's arguments, the statement in *Application of Dean*, 291 F.2d 947, 951 (C.C.P.A. 1961) that the preamble includes "all that portion at the beginning of the

claim 166 in its entirety makes clear that the language leading up to the colon provides

"introductory words," *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257

(Fed. Cir. 1989), which apply equally as context for each of the remaining portions of the claim.

Thus, the most sensible reading of the claim is that the preamble ends at the colon.   The structure

of claim 166 also suggests that the preamble ends at the colon, and it is followed by reference

characters "(A)," "(a1)," and "(a2)" which can be used to identify claim body elements.  *See*

MPEP § 608.01(m); *see also* Christoff Decl., Ex. 1 § 2.8.  Thus, the preamble of claim 166 ends at

the colon.

This leads to the third issue: whether this preamble is limiting.  The Federal Circuit "has

recognized that as a general rule preamble language is not treated as limiting." *Aspex Eyewear,*

*Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012).  Whether certain preamble

language falls outside this rule (i.e., should be treated as limiting) is effectively a claim

construction question, "resolved only on review of the entire[] . . . patent to gain an understanding

of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg.*

*Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal citations omitted).

Unfortunately, "[n]o litmus test defines when a preamble limits claim scope." *Id*.  However, the

Federal Circuit has offered the following guideposts:

> In general, a preamble limits the invention if it recites essential structure or steps, or
> if it is "necessary to give life, meaning, and vitality" to the claim. Conversely, a
> preamble is not limiting "where a patentee defines a structurally complete invention
> in the claim body and uses the preamble only to state a purpose or intended use for
> the invention." . . .
>
> [D]ependence on a particular disputed preamble phrase for antecedent basis may
> limit claim scope because it indicates a reliance on both the preamble and claim body
> to define the claimed invention. . . .
>
> [W]hen the preamble is essential to understand limitations or terms in the claim body,
> the preamble limits claim scope.

---

claim preceding the colon" was only a statement about the claim at issue in that case, not claims
generally.  Contrary to IBM's arguments, transitional words like "comprising" are generally used
to indicate that a claim is open-ended and do not necessarily signal the end of a preamble.
*Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of
art used in claim language which means that the named elements are essential, but other elements
may be added and still form a construct within the scope of the claim.").

United States District Court
Northern District of California

> [W]hen reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation.

> [C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention. Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention. Thus, preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant.

> [S]tatements of intended use or asserted benefits in the preamble may, in rare instances, limit apparatus claims, but only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art.

*Id*. at 808-09 (internal citations omitted). In addition, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

Here, the Court agrees with IBM that the preamble of claim 166 is limiting. Reviewing the '420 patent in its entirety, the Court finds that the inventors intended the language "hardware, including at least a processor, and software, in combination with said hardware" to be meaningful. The specification explains that "[t]his invention relates to data processing systems," such as "computers, networks of computers, or the like." '420 patent, col. 1 ll. 19, 25-26. The background section of the specification laments various problems associated with context-dependent identification of data items in computer systems, and states that "it is therefore desirable to have a mechanism which allows each processor in a multiprocessor system to determine a common and substantially unique identifier for a data item . . . ." *Id*., col. 3 ll. 6-11. The detailed description section of the specification describes exemplary hardware arrangements with which the system could be implemented. *See, e.g., id*., col. 4 l. 50-col. 5 l. 25. Reading claim 166 against this context, it is clear that claim 166 is not intended to be a set of disembodied set of steps, but a solution that is implemented on a computer and deployed in the real world. The only part of claim 166 that intimates this is the "hardware" language in the preamble. Thus, the preamble is "necessary to give life, meaning, and vitality" to the claim. *Catalina*, 289 F.3d at 808.

The Federal Circuit's conclusion in *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d

1021 (Fed. Cir. 2015) bolsters this conclusion. There, the Federal Circuit found that a preamble of an independent claim was limiting where one term in the preamble ("user") provided antecedent basis for a term in the body of claim and another term in the preamble ("repetitive motion pacing system") provided antecedent basis for a term in a dependent claim. *Id.* at 1024 ("Because the preamble terms 'user' and 'repetitive motion pacing system' provide antecedent basis for and are necessary to understand positive limitations in the body of claims in the '843 patent, we hold that the preamble to claim 25 is limiting."). Here, "hardware" in claim 166 provides antecedent basis for a term in the body of dependent claim 167, which recites: "The system of any one of claims 146 to 166 wherein the hardware comprises one or more computers." '420 patent, col. 57 ll. 14-15. Although it is true that in *Pacing Techs.* the preamble provided antecedent basis for both limitations in the same claim and in a dependent claim, the Federal Circuit's reference to the dependent claim suggests that antecedent basis for a dependent claim is still relevant.[15] Thus, the fact that "hardware" provides antecedent basis for claim 167 supports the Court's conclusion here. Thus, again, the preamble of claim 166 is limiting.

PersonalWeb nevertheless argues that the preamble of claim 166 is not limiting because it falls within the Federal Circuit line of cases finding preambles not limiting where (1) they only describe how the apparatus will be used, (2) the preamble does not affect the structure or steps of the claimed invention, and/or (3) they do not "provide antecedent basis for and are necessary to understand positive limitations" for any limitations in the body of the claims. Opp. at 7-11. The Court disagrees. This first set of cases relates primarily to apparatus claims, where the preamble language describes "the purpose or intended use of an invention." *See, e.g.*, *Marrin v. Griffin*, 599 F.3d 1290, 1292 (Fed. Cir. 2010) (preamble "[a] scratch-off label *for permitting a user to write thereon without the use of a marking implement*" was not limiting). By contrast, claim 166 is a *system* claim and "hardware" does not state either a purpose or intended use—instead, it is a

---

[15] The Court does not, however, read *Pacing Techs.* as suggesting (as IBM argues, Mot. at 8) that antecedent basis for a dependent claim is always sufficient to render a preamble limiting. *Pacing Techs.* is silent on this point, and such a bright-line rule would create tension with the Federal Circuit's earlier observation that "[n]o litmus test defines when a preamble limits claim scope." *Catalina Mktg. Int'l*, 289 F.3d at 808.

component in the claimed system.  The second set of cases involve claims where "the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention."  *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010) (internal quotation marks and citation omitted).  This is not true of claim 166.  "Hardware" is only mentioned in the preamble, so the body of the claim does not completely set forth the invention.  The last set of cases is also distinguishable because, as discussed above, "hardware" provides antecedent basis for dependent claim 167.  Thus, none of the cases cited by PersonalWeb persuade the Court that the preamble of claim 166 is not limiting.

Having found the preamble limiting leads to the fourth disputed issue: the extent to which the preamble limits the scope of claim 166.  PersonalWeb contends that the language "hardware, including at least a processor, and software, in combination with said hardware" only limits the environment in which the system of claim 166 operates, but not the structure that its embodiments must have.  Opp. at 11-13.  IBM, on the other hand, argues that the limitation is structural.  Mot. at 7-9; Reply at 3-5.

The Court agrees with IBM that "hardware" is a structural requirement.  The plain language of claim 166 recites a "system" that "compris[es]" these elements.  This stands in contrast to the environment-only cases cited by PersonalWeb, where the claim language made it explicit that it was only describing an environment that existed outside the claim itself.  For example, in *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1373 (Fed. Cir. 2011), the preamble recited inputs (i.e., encrypted "selected information" and a "control code" printed on a "financial instrument") received by the claimed system, not the claimed system itself.  In *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1307 (Fed. Cir. 2002), the preamble described a structural environment (i.e., a "computer" and a "digitizer") in which the claimed digitizing *method* operated.  In *Info. Prot. v. Symantec Corp.*, No. 2:08-CV-484, 2011 WL 13136605, at *3 (E.D. Tex. Nov. 14, 2011), the preamble described the environment "in" which the claimed apparatus operated, not the apparatus itself.  Claim 166 stands in contrast to these cases, as it does not explicitly claim "hardware" as only a description of environment.  Instead, it expressly requires that "hardware" is part of the claimed system.  Thus, "hardware" is a structural

21

1    requirement.

2         The Court notes, however, that even though "hardware" is a structural limitation, its

3    restriction on claim 166 is minimal.  This language is broad and encompasses almost any generic

4    computer implementation that includes "software," "hardware," and a "processor."  Thus, it

5    merely requires that the infringing system include these components.

6         In sum, the preamble of claim 166 is limiting and requires a system that includes the

7    structure of "hardware, including at least a processor, and software, in combination with said

8    hardware."

9                        b.  Partial Summary Judgment

10        With this understanding of claim 166, the Court turns to whether IBM is entitled to partial

11   summary judgment.  "To support a summary judgment of noninfringement it must be shown that,

12   on the correct claim construction, no reasonable jury could have found infringement on the

13   undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."

14   *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) (citations omitted).

15        The Court finds that, for its limited partial motion, IBM has met this burden.  As discussed

16   above, the Court construes IBM's motion as only seeking summary judgment with respect to

17   IBM's acts of making, selling, importing, and offering to sell TSM software, as opposed to

18   combinations of TSM software and hardware running this software that IBM may also provide to

19   its customers.  By definition, "software" does not include "hardware," which is a structural

20   requirement of claim 166.  Accordingly, the Court GRANTS IBM's motion for partial summary

21   judgment that IBM does not infringe claim 166 of the '420 patent by making, selling, importing,

22   and offering to sell TSM software.

23        The Court nevertheless notes that there may be disputed issues of material fact as to

24   whether instances in which IBM provides both TSM software and hardware that runs TSM

25   software constitute infringement of claim 166.  For example, as PersonalWeb identifies in its

26   opposition brief, IBM's corporate witness, Michael Sisco, testified that "IBM has a division called

27   IBM Global Services which does host servers for some [TSM] customers."  Christoff MSJ Decl.,

28   Ex. 2 at 13:9-14.  In addition, IBM promotes pairing TSM with other IBM hardware.  *See, e.g.*,

Christoff MSJ Decl., Ex. 4 at 603, 607, 612. However, these questions fall outside the scope of IBM's motion and the Court declines to decide them.

### ii. Doctrine of Equivalents

IBM also moves for summary judgment that TSM does not infringe claim 166 of the '420 patent under the doctrine of equivalents. IBM argues that it is so entitled because PersonalWeb did not disclose any doctrine of equivalents theories in either its infringement contentions or its expert report. Mot. at 9-10.

PersonalWeb responds that summary judgment is inappropriate because expert testimony is not necessary to prove doctrine of equivalents. Opp. at 17. Thus, PersonalWeb argues, it could still prove doctrine of equivalents at trial. *Id.* PersonalWeb also argues that its infringement contentions would not preclude it from doing so because it stated in its June 28, 2013 infringement contentions that it "reserves the right to contend that the Accused Instrumentalities still infringe under the doctrine of equivalents." *Id.* at 17-18.

The Court agrees with IBM that PersonalWeb's infringement contentions on doctrine of equivalents are inadequate. In this district, Patent Local Rule 3-1(e) requires disclosure of "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e). Blanket reservations of rights are not sufficient. *See OptimumPath, LLC v. Belkin Int'l, Inc.*, No. C 09-01398 CW, 2011 WL 1399257, at *8 (N.D. Cal. Apr. 12, 2011), *aff'd*, 466 F. App'x 904 (Fed. Cir. 2012) ("OptimumPath . . . relies on a blanket statement . . . This language falls short of the requirements of Patent Local Rule 3-1(e)."); *Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, *3 (N.D. Cal. Dec. 29, 2008) ("The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation."); *MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, *5 (N.D. Cal. Mar. 2, 2004) ("This blanket statement does not identify where each element of each asserted claim is found within each wafer and does not point out each element of each asserted claim that MEMC claims is present under the doctrine of equivalents.").

The fact that this case originated in the Eastern District of Texas does not immunize

23

1  PersonalWeb's shortcomings.  Once this case was transferred, this district's patent local rules

2  governed the case moving forward.  *See Life Techs. Corp. v. Biosearch Techs.*, Inc., No. C 12-

3  00852 WHA, 2012 WL 1831595, at *2 (N.D. Cal. May 18, 2012) (applying this district's patent

4  local rules to infringement contentions after the case transferred from the Eastern District of

5  Texas).  At that point, PersonalWeb could have sought leave to amend its infringement

6  contentions so that they complied with the local rules of this district.  *See, e.g.*, *Life Techs. Corp.*,

7  2012 WL 1831595, at *2 (granting leave to amend infringement contentions to comply with

8  additional requirements in this district after transfer from the Eastern District of Texas).  It did not

9  do so.  PersonalWeb must now bear the consequences of this strategic decision.

10  In this district, the patent local rules "provide[] for a 'streamlined' mechanism to replace

11  the 'series of interrogatories that defendants would likely have propounded' in its absence."

12  *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760RMW(RS), 2007 WL 1052900, at *2

13  (N.D. Cal. Apr. 5, 2007).  However, "[w]hile the Rules are thereby intended to hasten resolution

14  on the merits, they are not . . . a mechanism for resolving the merits of the parties' dispute."  *Id*.  It

15  may be the case that failure to comply with the patent local rules sets off a cascading set of

16  preclusive consequences such that summary adjudication is appropriate.  Indeed, Courts in this

17  district have cited deficient infringement contentions as additional bases for granting summary

18  judgment of noninfringement with respect to doctrine of equivalents.  *See, e.g.*, *OptimumPath.*,

19  2011 WL 1399257, at *8; *Rambus*, 2008 WL 5411564 at *3.  However, what ultimately governs

20  the summary judgment determination is the standard under Fed. R. Civ. R. 56(c).

21  Here, the Court finds that, even if the Court were to look past PersonalWeb's failure to

22  comply with the patent local rules, summary judgment is appropriate because PersonalWeb has

23  failed to provide sufficient evidence to create a triable issue of fact that there is infringement under

24  the doctrine of equivalents.  In order to prove infringement under doctrine of equivalents, "a

25  patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality

26  of the differences' between the claimed invention and the accused device or process, or with

27  respect to the 'function, way, result' test . . . ." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651

28  F.3d 1318, 1338 (Fed. Cir. 2011) (internal citations and quotation marks omitted).  "The same rule

applies in the summary judgment context." *Id.* at 1339. Here, PersonalWeb's expert has not

provided an opinion on doctrine of equivalents. JSUF ¶ 49. As such, there is no "particularized

testimony and linking argument" that would create a genuine issue of material fact as to

infringement under doctrine of equivalents. *Am. Calcar*, 651 F.3d at 1338. Accordingly, IBM is

entitled to summary judgment on this basis.

For these reasons, the Court GRANTS IBM's motion for summary judgment that TSM

does not infringe claim 166 of the '420 patent under the doctrine of equivalents.

### iii. Joint Infringement

IBM moves for summary judgment that it does not jointly infringe claim 166 of the '420

patent on the grounds that PersonalWeb did not disclose any joint infringement theories in either

its infringement contentions or its expert report. Mot. at 11-12.

PersonalWeb does not dispute that its expert did not provide separate opinions on joint

infringement, but argues that this is not fatal, because expert opinion is not necessary to support

claims of joint infringement. Opp. at 17. PersonalWeb further argues that summary judgment is

inappropriate because there are still disputed issues of material fact. Opp. at 18-20. Specifically,

PersonalWeb identifies that "IBM business partners operate under a licensing agreement with IBM

to deploy IBM software, including TSM, and hardware." Opp. at 19. It also argues that it did not

need to disclose joint infringement in its infringement contentions because it filed its infringement

contentions in the Eastern District of Texas, which does not require explicit disclosure of these

theories. *Id.* at 18.

The Court agrees with IBM that PersonalWeb's infringement contentions on joint

infringement are deficient. Patent Local Rule 3-1(d) requires that "[i]nsofar as alleged direct

infringement is based on joint acts of multiple parties, the role of each such party in the direct

infringement must be described." PersonalWeb's infringement contentions do not identify any

specific parties who act jointly to infringe claim 166, let alone "describe" what their respective

"role[s]" are. Thus, they do not comply with Patent Local Rule 3-1(d). Further, for the same

reasons discussed above with respect to doctrine of equivalents, this deficiency is not excused by

the fact that this case originated in the Eastern District of Texas, as this district's patent local rules

now govern the case.

Regardless, even if the Court were to set aside PersonalWeb's failure to comply with Patent Local Rule 3-1(d), the Court finds that IBM is entitled to summary judgment because PersonalWeb has not provided sufficient evidence to create a triable issue of fact with respect to joint infringement. In order to be liable under § 271(a) under a joint infringement theory, IBM must be vicariously liable for the actions of others who also take part in the infringement. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011) ("The only way that Centillion can establish 'use' by Qwest is if Qwest is vicariously liable for the actions of its customers such that "use" by the customers may be attributed to Qwest."). Vicarious liability arises when one party controls or directs the actions of another. *Id*. Here, the only evidence that PersonalWeb points to is that "IBM business partners operate under a licensing agreement." Opp. at 19. However, there is no evidence that IBM controls or directs the actions of these business partners. *See id*. Indeed, the phrase "licensing agreement" suggests the opposite. Deposition testimony from IBM's corporate witness also suggests that these business partners act independently. *See* Christoff MSJ Decl., Ex. 2 at 23:23-24:4 ("Business partner is a separate company that works independently of IBM but as a partnership"); *id*. at 26:7-16 ("So to boil down a typical Spectrum Protect [sic] business partner is there is a licensing agreement with them and they deploy independent, completely independent of IBM. We can certainly consult, but where they deploy is their decision."). Thus, because there is no evidence that creates a triable issue of material fact with respect to joint infringement, IBM is entitled to summary judgment. IBM's motion for summary judgment with respect to joint infringement is GRANTED.

### iv.    Indirect Infringement

IBM moves for summary judgment that it does not indirectly infringe claim 166 of the '420 patent on the grounds that PersonalWeb did not disclose any indirect infringement theories in either its infringement contentions or its expert report. Mot. at 11-12.

PersonalWeb does not dispute that its expert did not provide separate opinions on indirect infringement, but argues that this is not fatal, because expert opinion is not necessary to support claims of direct infringement. Opp. at 17. PersonalWeb further argues that summary judgment is

26

1    inappropriate because there are still disputed issues of material fact.  Opp. at 18-20.  It also argues

2    that it did not need to disclose indirect infringement in its infringement contentions because it filed

3    its infringement contentions in the Eastern District of Texas, which does not require explicit

4    disclosure of these theories.  *Id*. at 18.

5         As with doctrine of equivalents and joint infringement, PersonalWeb's infringement

6    contentions on indirect infringement are deficient.  Patent Local Rule 3-1(d) requires "an

7    identification of any direct infringement and a description of the acts of the alleged indirect

8    infringer that contribute to or are inducing that direct infringement."  "[B]oilerplate language

9    asserting indirect infringement" and "'generic allegations' that recite the elements of or general

10   theory behind indirect infringement" do not satisfy this requirement.  *Blue Spike, LLC v. Adobe

11   Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015)

12   (citations omitted).  Instead, "Rule 3-1(d) requires facts."  *France Telecom, S.A. v. Marvell

13   Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3,

14   2013).  PersonalWeb's infringement contentions make no mention of any indirect infringement

15   theory, let alone provide any "description of the acts of [IBM] that contribute to or are inducing

16   that direct infringement."  As such, they fail to comply with Patent Local Rule 3-1(d).  Further, for

17   the same reasons discussed above with respect to doctrine of equivalents, this deficiency is not

18   excused by the fact that this case originated in the Eastern District of Texas, as this district's patent

19   local rules now govern the case.

20        In addition to the deficient infringement contentions, the Court also agrees that it is

21   troubling that PersonalWeb deliberately chose not to disclose any theories of indirect infringement

22   in its expert report.  JSUF ¶ 50; *see also* JSUF ¶ 51. Down the road, this strategic choice may

23   provide fertile grounds for motion(s) *in limine*, as well as constrain the ways in which

24   PersonalWeb can prove indirect infringement at trial.  *Compare, e.g.*, *Nortek Air Sols., LLC v.

25   Energy Lab Corp.*, No. 14-CV-02919-BLF, 2016 WL 3856250, at *7 (N.D. Cal. July 15, 2016)

26   ("If that expert's testimony is not found in his or her expert report, that evidence will not be

27   allowed at trial.").

28        Nevertheless, the Court finds it premature to grant summary judgment based on these

27

omissions alone. Instead, the Court agrees with PersonalWeb that expert testimony may not be necessary for it to carry it burden of proof at trial as to all of the elements of either inducement or contributory infringement. Specifically, in order to prove inducement, PersonalWeb will need to "show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). PersonalWeb's expert has provided an opinion on how the client-deduplication feature of TSM infringes claim 166 of the '420 patent that is independent of who (i.e., IBM or one of its customers) is using the feature. Whether IBM "knowingly induced" its customers to use this feature and had "specific intent to encourage" this use are not necessarily technical issues, and PersonalWeb may be able to prove through lay testimony. Similarly, in order to prove contributory infringement, PersonalWeb must show "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Whether IBM "had knowledge of the ['420] patent" is not necessarily a technical issue, and PersonalWeb's expert's opinions may be broad enough to implicate the other elements or IBM may be able to prove them through technical lay witnesses at trial. Accordingly, the Court cannot summarily conclude that PersonalWeb's failure to provide expert opinion on indirect infringement entitles IBM to summary judgment.

Instead, the salient question is whether there exist material questions of fact as to whether IBM indirectly infringes claim 166. The Court finds that there are. For example, with respect to inducement, PersonalWeb identifies that IBM encourages its customers and partners to use the allegedly infringing "client-side deduplication" feature by advertising its benefits, touting it as a "best practice," and providing instructions on how to configure systems with this feature. Opp. at 19 (citing Christoff MSJ Decl., Exs. 7, 14, 15 and Christoff MSJ Decl., Ex. 3 ¶ 40). With respect to contributory infringement, PersonalWeb identifies that the "client-side deduplication" operations have no non-infringing use because "infringement happens each time the routine is performed so long as the 'client-side deduplication' is activated" and that IBM makes, offers, and

sells these routes as specifically adapted for use in infringing systems, as evidenced by the

promotional materials of its business partners. Opp. at 20 (citing Christoff MSJ Decl., Exs. 10-

13). In contrast, IBM has not identified any element of inducement or contributory infringement

which is indisputably lacking.[16] Accordingly, the Court finds that material questions of fact

remain as to indirect infringement. IBM's motion for summary judgment with respect to indirect

infringement is DENIED.

### v. Infringement by Other TSM Features

IBM moves for partial summary judgment that (a) the "server-side deduplication" feature

and (b) all other features besides the "client-side deduplication" feature of TSM do not infringe

claim 166 of the '420 patent. Mot. at 12-13.

PersonalWeb does not dispute that only the "client-side deduplication" feature of TSM is

accused of infringement, but argues that summary judgment is nevertheless inappropriate because

courts cannot grant summary judgment on a piecemeal basis as to "features" of accused products.

Opp. at 20-21.

The Court agrees with PersonalWeb that summary judgment is inappropriate. A multi-

featured product infringes a claim as long as it includes an infringing feature; the fact that it also

includes non-infringing features is irrelevant. *Vulcan Engineering Co., Inc. v. Fata Aluminium,

Inc.*, 278 F.3d 1366, 1375 (Fed. Cir. 2002) ("It is irrelevant whether an element has capabilities in

addition to that stated in the claim. When the claimed function is performed in the accused system,

---

[16] The Court finds the arguments that IBM attempts to make in this vein unpersuasive. The Court disagrees that PersonalWeb's failure to "identify . . . specific customers []or specific 'business partners' that directly infringe," Reply at 10, is fatal, as PersonalWeb's expert's opinions on how the client-deduplication feature of TSM infringes claim 166 of the '420 patent at least create a triable issue of fact with respect to direct infringement. The Court also disagrees that "server-side deduplication" indisputably shows that there are non-infringing uses. The proper question under § 271(c) is whether there are non-infringing uses for the accused feature ("client-side deduplication"), not the multi-featured product as a whole (TSM). *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) ("we should analyze contributory infringement based on this separable feature, rather than the entire product"); *see, e.g., id.* (finding that the "component at issue here [for § 271(c) purposes] is the specific hardware and software that performs fragmentation" not the entire accused product); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) (finding that the relevant "material or apparatus" under § 271(c) was the XML Editor in Microsoft Word, not the entirety of Microsoft Word).

by the same or equivalent structure, infringement of that claim element is established."). Thus, as long as TSM includes the "client-side deduplication" feature, it allegedly infringes. That said, if there exist versions of TSM that do not include the "client-side deduplication" feature, summary judgment may be appropriate for those products. However, IBM has not specifically identified any such versions (e.g., by name or product number). Thus, at the very least, IBM has not met its burden as the moving party to show that there is no material dispute that certain, specific versions of TSM do not infringe claim 166. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) (citations omitted) ("To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."). For this reason, IBM's motion for summary judgment with respect to other TSM features is DENIED.

### vi.    Infringement by Remaining Patents and Products

IBM moves for summary judgment of noninfringement for the patent claims and accused products that PersonalWeb no longer asserts. As discussed above, PersonalWeb originally accused the nine Originally Accused Products of infringing the eight Originally Asserted Patents. Dkt No. 29. IBM counterclaimed for declaratory judgment of noninfringement as to all of these patents and products. Dkt. No. 34. At this point, PersonalWeb now only asserts claim 166 of the '420 patent against TSM. However, with the exception of claims 1-3, 29, and 35 of the '791 patent and claims 1 and 10 of the '280 patent, the parties have not stipulated to dismiss any of the other claims that PersonalWeb no longer asserts. Dkt. No. 219.

IBM argues that it is entitled to summary judgment of noninfringement for the patent claims that PersonalWeb no longer asserts because IBM's declaratory judgment counterclaims are still live and PersonalWeb, as the patentee, will not be able to bear its burden of proof at trial that these claims are infringed. Mot. at 14-15.

PersonalWeb argues that summary judgment is not appropriate and that the Court should instead dismiss these issues as moot. Opp. at 21. It also argues that dismissal as moot is particularly warranted in this case because PersonalWeb amicably agreed to drop these claims

United States District Court
Northern District of California

after encouragement from IBM, so it would not be fair to now allow IBM to get summary judgment for these claims. *Id*. at 22.

The Court agrees with IBM. PersonalWeb's Amended Complaint asserted every claim of the eight Originally Asserted Patents, and IBM's declaratory judgment counterclaims were directed towards every claim as well. Even though PersonalWeb has now elected to not disclose infringement theories (through its infringement contentions and now expert report) as to any claim besides claim 166 of the '420 patent, all of these other claims (aside from claims 1-3, 29, and 35 of the '791 patent and claims 1 and 10 of the '280 patent, which have been dismissed with prejudice, Dkt. No. 219) are still live. At trial, PersonalWeb will bear the responsibility of proving that these other claims are infringed, both for its own infringement claims as well as IBM's declaratory judgment claims for noninfringement. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849-50 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee. . . . [I]n a licensee's declaratory judgment action, the burden of proving infringement should remain with the patentee."). However, because PersonalWeb's expert report only covers claim 166 of the '420, it has no evidence upon which it can rely to prove infringement as to these other claims. Accordingly, IBM is entitled to summary judgment of noninfringement for those claims.

For these reasons, the Court GRANTS IBM, for each of the Originally Accused Products, summary judgment of noninfringement as to claims 1-165 and 167-178 of the '420 patent, as well as all valid claims of the '791, '280, '442, '310, '539, '544, '622, and '096 patents. The Court also GRANTS IBM, for each of the Originally Accused Products except TSM, summary judgment of noninfringement as to claim 166 of the '420 patent.

### vii.    Willful Infringement

IBM moves for summary judgment of no willful infringement. It provides two reasons in support: First, IBM argues that PersonalWeb is barred from seeking enhanced damages based on IBM's post-filing conduct because PersonalWeb did not seek a preliminary injunction. Mot. at 17-18. Second, IBM argues that PersonalWeb has provided no evidence of egregious misconduct warranting an award of enhanced damages because (1) its infringement was nothing more than

typical; (2) PersonalWeb kept changing its infringement theories, so IBM did not have "actual notice of infringement;" (3) IBM's non-infringement defenses were reasonable; and (4) IBM's invalidity defenses were reasonable. Mot. at 18-22.

PersonalWeb disagrees, arguing that there is no rigid rule that prevents a plaintiff from recovering enhanced damages based on a failure to seek a preliminary injunction. Opp. at 23. PersonalWeb also takes issue with IBM's line of second reasoning, arguing that: IBM plainly understood the scope of its infringement theories; IBM's invalidity defenses were not reasonable, as the PTO has confirmed the patentability of claim 166 in reexamination proceedings; and IBM's failure to provide evidence regarding the subjective belief of its decisionmakers is fatal to its summary judgment motion. *Id*. at 24-25.

The Court agrees with PersonalWeb that its failure to seek a preliminary injunction does not automatically bar enhanced damages. As the Federal Circuit recently confirmed, "there is no rigid rule that a patentee must seek a preliminary injunction in order to seek enhanced damages." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1296 (Fed. Cir. 2017) (internal citations and quotation marks omitted) (concluding that the district court erred in precluding patentee from presenting evidence of willful infringement because it relied exclusively on post-suit willfulness conduct, and it had not first sought a preliminary injunction).

Thus, the relevant question is whether there remain genuine disputes of material fact as to whether IBM's conduct falls within the class of "egregious cases typified by willful misconduct" warranting enhanced damages under *Halo.* 136 S.Ct. at 1934. "Determining willfulness is a highly fact-based endeavor." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 841147, at *9 (E.D. Tex. Mar. 3, 2017). In particular, it turns on the subjective belief of the accused infringer, measured at the time of the challenged conduct. *Halo*, 136 S.Ct. at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). District courts have, under § 284, the discretion "to punish the full range of culpable behavior" and "courts should continue to take into account the particular circumstances of each case." *Id*.

In its interrogatory responses, PersonalWeb identified that IBM "has continued its infringement since at least the filing of the complaint in this action." JSUF ¶ 53. The parties dispute whether the noninfringement and invalidity defenses that IBM maintains are reasonable. *Compare* Mot. at 20-21, *with* Opp. at 24-25. IBM cites to several non-infringement positions in its interrogatories, JSUF ¶ 52 (citing Christoff MSJ Decl., Ex. 9) and touts the fact that *inter partes* review and reexamination proceedings have been instituted at the U.S. Patent and Trademark Office, Dkt Nos. 47-5, 72-2. Mot. at 20-21. PersonalWeb, on the other hand, points out that IBM's noninfringement defenses have been rejected in prior cases and that the patentability of claim 166 was ultimately confirmed by the U.S. Patent and Trademark Office during reexamination. Opp. at 24-25. It may very well be that a reasonable factfinder would conclude that, based on this objective evidence, IBM does not subjectively believe it is infringing a valid patent. *Compare Erfindergemeinschaft UroPep GbR*, No. 2:15-CV-1202-WCB, 2017 WL 841147, at *9. However, this is a factual dispute which the Court finds it cannot resolve on summary judgment. Accordingly, the Court DENIES IBM's motion for summary judgment of no willful infringement.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES IBM's Motion to Dismiss (Dkt. No. 212) and GRANTS IN PART and DENIES IN PART IBM's Motion for Summary Judgment (Dkt. No. 218), as set forth below:

1.     IBM's motion to dismiss PersonalWeb's infringement claims is DENIED.

2.     IBM's motion for partial summary judgment that manufacture, sale, importation, and/or offer for sale of TSM software does not infringe claim 166 of the '420 patent is GRANTED.

3.     IBM's motion for partial summary judgment that TSM does not infringe claim 166 of the '420 patent under the doctrine of equivalents is GRANTED.

4.     IBM's motion for partial summary judgment that IBM does not jointly infringe claim 166 of the '420 patent is GRANTED.

5.     IBM's motion for partial summary judgment that IBM does not indirectly infringe

claim 166 of the '420 patent is DENIED.

6.     IBM's motion for partial summary judgment that TSM without the "client-side deduplication" feature does not infringe claim 166 of the '420 patent is DENIED.

7.     IBM's motion for partial summary judgment that the claims no longer asserted by PersonalWeb and not yet dismissed are not infringed is GRANTED.

8.     IBM has not willfully infringed claim 166 of the '420 patent is DENIED.

**IT IS SO ORDERED.**

Dated: May 9, 2017



EDWARD J. DAVILA
United States District Judge