UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PERSONALWEB TECHNOLOGIES LLC, et al.,

Plaintiffs,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant.

Case No. 16-cv-01266-EJD

**FIRST ORDER RE: MOTIONS *IN LIMINE***

Re: Dkt. Nos. 255, 270, 271, 275, 278, 280, 281, 282, 283, 284, 288, 317

Presently before the Court are certain motions *in limine* and other pre-trial motions filed by both parties. Dkt. Nos. 255, 269, 270, 271, 275, 278, 279, 280, 281, 282, 283, 284, 285, 288, 313, 317. The Court finds certain of these matters suitable for decision without oral argument. Thus, having considered the parties' moving and responding papers, the Court rules as follows as to Plaintiffs' motions:

1. Plaintiffs' second motion to exclude any argument, testimony or evidence to Personal Web's standing to sue (Dkt. No. 270) is GRANTED IN PART and DENIED IN PART. Defendants may not mention "prudential standing," attempt to re-litigate the prudential standing issue, or make any argument or reference to the Court's Motion to Dismiss order (Dkt. No. 245) or the reasoning contained. Defendants may, however, introduce evidence and argument relating to facts underlying the prudential standing issue, including the parties' licensing history and its impact on Defendants' subjective belief as to whether it was infringing the '420 patent.

Under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

1    consequence in determining the action." Under Federal Rule of Evidence 403, relevant evidence
2    can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair
3    prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly
4    presenting cumulative evidence." The Court finds that, because it has already been resolved, the
5    issue of prudential standing is not relevant to the issues that remain to be tried. For this same
6    reason, the Court's ruling and reasoning in its Motion to Dismiss order (Dkt. No. 245) are also not
7    relevant. Moreover, even if this evidence was relevant, the probative value of such evidence
8    would be outweighed by its potential to cause undue delay and to waste time. Prudential standing
9    has already been litigated, so it would be a waste of time for the jury to hear evidence or argument
10   which seeks to re-litigate this issue.

11            Nevertheless, the Court finds that the history of licensing and IBM's subjective belief, in
12   light of this history, as to whether it was infringing the '420 patent are relevant to the issue of
13   willfulness. Such evidence regarding IBM's state of mind will assist the fact finder in determining
14   whether its infringement was "egregious." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct.
15   1923, 1933, 195 L. Ed. 2d 278 (2016) ("Awards of enhanced damages . . . are . . . designed . . . for
16   egregious infringement behavior. . . . [C]ulpability is generally measured against the knowledge
17   of the actor at the time of the challenged conduct."). The Court also does not find that its
18   probative value is substantially outweighed by the danger of unfair prejudice or confusing the
19   issues.

20            2.       Plaintiffs' third motion to preclude any argument, evidence, or testimony of non-
21   accused features of the Tivoli Storage Manager ("TSM") product as evidence that the TSM
22   residing on a computer does not infringe (Dkt. No. 271) is DENIED.

23            The Court finds that such evidence, including evidence relating to the server-side
24   deduplication feature, is relevant to issues of infringement. Plaintiffs' arguments go to the weight
25   of this evidence, which is the proper subject of cross examination. Further, the Court does not
26   find that the probative value is substantially outweighed by the danger of misleading the jury or
27   confusing the issues. It is evident from the briefing that the parties know how to distinguish
28   server-side deduplication from client-side deduplication, and these clarifications can be drawn out

1 through cross-examination.

2       3. Plaintiffs' motion to exclude portions of the rebuttal expert report and proposed testimony of Dr. James Kearl (Dkt. No. 275) is DENIED.

Federal Rule of Evidence 702 permits an expert to testify if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Read together, Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), broadly require that an expert not only be qualified, but also that the expert's testimony be reliable and relevant.

When faced with a challenge to an expert, "[t]he trial judge must perform a gatekeeping function to ensure that the expert's proffered testimony" meets this standard. *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). The role is a flexible one, such that the judge is afforded "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Plaintiffs do not challenge Dr. Kearl's expertise or argue that his testimony is unhelpful to the jury. Instead, Plaintiffs argue Dr. Kearl's testimony should be limited or excluded because (1) he used forward citation analysis to apportion the value of the '420 patent; and (2) he relied on the Fair survey to discount the value of the '420 patent. Dkt. No. 275 at 8-14. Specifically, Plaintiffs complain that use of the Fair survey was improper because (a) Dr. Kearl discounted based on whether client-side deduplication is enabled; (b) Dr. Kearl did not account for use by IBM; and (c) Dr. Kearl failed to link the survey period to the damages period. *Id*. at 10-14.

Plaintiffs' first argument questions whether Dr. Kearl's methodology was reliable. Plaintiffs do not dispute that forward citation analysis is itself an accepted and reliable methodology for apportioning the value of a particular patent in a portfolio; instead, they take issue with its application here. *See* Dkt. No. 275 at 8-10; Dkt. No. 324-3 at 1-4. According to Plaintiffs, when a portfolio involves related patents that share the same specification and drawings,

3

the citations to the related patents should be summed, and the total should be attributed to each patent in ranking them against others in the portfolio. Dkt. No. 275 at 8-9. This is because, Plaintiffs argue, patents are cited for their disclosure, so a citation need only refer to one patent in a bundle of related patents. *Id*. Because Dr. Kearl does not do this, Plaintiffs contend, his opinion is unreliable. *Id*. at 8-10. The Court finds that Plaintiff's complaint goes to the weight and credibility of Dr. Kearl's opinion, not its reliability. Specifically, Plaintiffs hone in on a factual assumption—that the patents in the portfolios relied on by Dr. Kearl are sufficiently distinct (despite their shared specification and drawings) that a citation to one does not suffice as a citation to all. Whether this assumption was accurate in light of the particular patents in those portfolios is something that Plaintiffs can explore on cross-examination.

Plaintiffs' second argument faults Dr. Kearl for relying on the survey and report prepared by Ms. Fair. As an initial matter, Dr. Kearl's reliance on this survey evidence does not make his opinion unreliable because experts in his field would reasonably rely on that type of data in forming an opinion. Fed. R. Evid. 703. With respect to the specific complaints that Plaintiffs raise, the Court finds that each raise issues for cross-examination that go to the weight, not the admissibility of Dr. Kearl's opinion. First, the extent of use of client-side deduplication is at least relevant to the *Georgia-Pacific* factor regarding "the nature of the patented invention, its character in the commercial embodiment owned and produced by the licensor, and the benefits to those who use it." Second, it was appropriate for Dr. Kearl, as a rebuttal expert, to not explicitly account for use by IBM because Dr. Akemann, Plaintiffs' expert, did not opine on use by IBM. Third, Ms. Fair provided reasons in her report for why she believed it was more accurate to select a survey period that was different from the damages period, and Dr. Kearl was entitled to rely on this expert assessment. Thus, none of these bases render Dr. Kearl's opinion unreliable.

4. Plaintiffs' motion to strike Mr. Jacob Drew from IBM's witness list (Dkt. No. 317) is GRANTED.

Federal Rule of Civil Procedure 26(a)(1) requires the disclosure of the "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Parties who fail to comply with

4

1    Rule 26(a)(1) become subject to a sanction under Rule 37(c)(1), which provides that "[i]f a party
2    fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that . . .
3    witness to supply evidence . . . at a trial, unless the failure was substantially justified or is
4    harmless." Here, IBM did not disclose Mr. Drew in its initial disclosures or any of its amended
5    initial disclosures pursuant to Rule 26(a). Instead, it waited until July 6, 2017—the due date for
6    the Joint Witness List and deposition designations—to disclose Mr. Drew. The Court finds that
7    IBM has not met its burden of showing that this failure to comply with Rule 26(a) is substantially
8    justified or harmless. IBM offers no justification for its late disclosure, and the fact that Mr. Drew
9    was known to Personal Web does not negate the harm that Personal Web suffered by not being
10   able to make preparations during discovery for use of his deposition at trial.
11        The Court rules as follows as to Defendants' motions:
12        1.    Defendant's first motion to exclude evidence and argument relating to Personal
13   Web's willful infringement theory (Dkt. Nos. 255, 278) is DENIED.
14        "Motions *in limine* are meant to deal with discrete evidentiary issues related to trial . . . .
15   The denial of a motion *in limine* is warranted where the moving party seeks to argue the merits of
16   its case and preclude the non-moving party from presenting its case." *Dunn ex rel Albery v. State*
17   *Farm Mut. Auto Ins. Co.*, 264 F.R.D. 266, 274-75 (E.D. Mich. 2009); *Feitshans v. Kahn*, No. 06
18   Civ. 2125(SAS), 2008 WL 344722, at *4 (S.D.N.Y. Feb. 6, 2008). The Court finds that
19   Defendant's motion falls within category, as it seeks to argue the merits of Plaintiffs' willfulness
20   claims. This is not a proper basis upon which to exclude evidence or argument. Plaintiffs are
21   entitled to put on their willfulness case, even if Defendant thinks it is weak. Defendant's
22   arguments go to the weight of Plaintiffs' evidence, which is the proper subject of cross
23   examination.
24        2.    Defendant's second motion to exclude from trial opinions not disclosed in expert
25   reports (Dkt. No. 284) is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.
26   Specifically, with respect to Dr. Reiher and Dr. Rhyne, the following opinions are excluded as
27   beyond the scope of Plaintiffs' experts' reports:
28        • Dr. Reiher: (1) how any specific hardware meets the "hardware" limitation of

5

> claim 166; (2) how TSM software with any particular hardware might infringe claim 166; (3) how IBM might infringe claim 167; and (4) opinions regarding any surveys conducted by IBM or otherwise.
>
> - Dr. Rhyne: (1) that secondary considerations, other than with regard to the licenses to the patent-in-suit listed in paragraph 110 of his report the commercial success of the licensed products as discussed in paragraph 111 of his report, support nonobviousness; and (2) opinions regarding any surveys conducted by IBM or otherwise.

Federal Rule of Civil Procedure 26(a)(2) requires that "[u]nless otherwise stipulated or ordered by the court," the parties' experts each provide a written report which contains "a complete statement of all opinions the witness will express and the basis and reasons for them." "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Parties who fail to comply with Rule 26(a)(2) become subject to a sanction under Rule 37(c)(1), and the party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). "If [an] expert's testimony is not found in his or her expert report, that evidence will not be allowed at trial." *Nortek Air Sols., LLC v. Energy Lab Corp.*, No. 14-CV-02919-BLF, 2016 WL 3856250, at *7 (N.D. Cal. July 15, 2016).

As to Dr. Reiher, the Court agrees that all of the opinions identified by Defendant should be excluded. Dr. Reiher's written report only provides opinions that (1) "IBM directly infringes claim 166 of the '420 patent by making, using, selling, and offering to sell the TSM product in the United States;" and (2) "IBM infringes based on its testing and use of TSM within the United States." Dkt. No. 309-6 ¶ 159. Accordingly, any other opinions on ultimate issues, including opinions on indirect infringement, fall outside the scope of his report. Further, in discussing the "hardware" limitation, Dr. Reiher only identifies generic system requirements for hardware that TSM software could be installed on, as well as general exemplary architectures through which TSM could be deployed. *Id*. ¶¶ 65-67. He does not identify any particular examples of hardware upon TSM can be installed, or give any opinion on how TSM software works with any particular examples of hardware. *See id*. He also does not specifically address any surveys conducted by IBM. *See* Dkt. No. 309-6. Thus, opinions on these topics also fall outside the scope of his written report. Plaintiffs have not met their burden of showing that this omission was substantially

justified or is harmless, so exclusion is warranted.

As to Dr. Rhyne, the Court agrees that Dr. Rhyne does not provide any specific opinion on surveys conducted by IBM. *See* Dkt. No. 284-3. The Court also agrees that Dr. Rhyne's opinion on secondary considerations is limited and discusses licenses, but the Court also finds that Dr. Rhyne discusses the commercial success of licensed products. *See id*. ¶¶ 110-11. Thus, these two types of secondary considerations are within the scope of Dr. Rhyne's report; other secondary considerations and also the survey evidence identified by Defendant are not. With respect to these latter categories, Plaintiffs have not met their burden of showing that this omission was substantially justified or is harmless, so exclusion is proper.

All rulings with respect to Dr. Akemann are DEFFERED. The parties shall present argument on these matters at the Final Pretrial Conference, including the extent to which his opinions are "based on" particular infringement theories and their impact on his analysis.

3. Defendant's fourth motion to exclude testimony conflicting with the Court's claim constructions and arguing claim construction to the jury (Dkt. No. 281) is GRANTED IN PART and DENIED IN PART. Personal Web may not make arguments that the phrase "substantially unique" requires that the five requirements described at column 11 line 63 through column 12 line 10 be met. Personal Web may, however, argue or present evidence to the effect that the jury can find infringement even if the "client-side deduplication" feature within TSM is not activated.

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mark Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). "Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that jury will render a verdict not supported by substantial evidence." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341-YGR, 2014 WL 971765, at *4 (N.D. Cal. Mar. 5, 2014). Accordingly, neither party may make arguments to the jury that contradict the Court's claim constructions or otherwise relate to the interpretation of claim terms.

Applied to the specific challenges raised here, Personal Web may not make arguments that

7

1  the phrase "substantially unique" requires that the five requirements described at column 11 line

2  63 through column 12 line 10 be met. This improperly suggests that "digital identifier" should be

3  construed more restrictively than the Court's construction.[1]

4  However, Personal Web may argue or present evidence to the effect that the jury can find

5  infringement even if the "client-side deduplication" feature within TSM is not activated. The

6  Court has never construed claim 166 to require activation. *See* Dkt. No. 103. Moreover, the Court

7  does not find that, in light of current Federal Circuit law, claim 166 requires activation. In

8  *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002), the

9  Federal Circuit rejected the idea that a software product cannot infringe an apparatus claim if its

10 features are not activated because "as in every infringement analysis, the language of the claims,

11 as well as the nature of the accused product, dictates whether an infringement has occurred." In

12 that case, the Federal Circuit found that the claims, which were directed toward "[a] computer for

13 playing football" including "means for scoring . . . bonus points" required only that these means

14 were "already present in the underlying software . . . regardless whether that means is activated or

15 utilized in any way." *Id*. The Court finds that claim 166 presents a similar situation: it is enough

16 that the claimed combination of hardware and software include (i.e., already programmed into the

17 software and installed on the hardware) the capability to perform the recited functions, regardless

18 of whether it is activated. Thus, Personal Web is not precluded from presenting this view to the

19 jury.

20      4.      Defendant's fifth motion to exclude from trial U.S. Patent & Trademark Office

21 ("USPTO") activities and unsupported or improper validity arguments (Dkt. No. 282) is DENIED.

22      Each of the three categories of evidence specifically identified in Defendants' motion is

23 relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice.

24 First, the reexamination proceedings are relevant because they pertain to the '420 patent and

25 involve at least one prior art reference that is also at issue in this case: Francisco. Second, the

---

[1] The Court also notes that this suggestion is legally incorrect, as claims are not limited to the embodiments disclosed in the specification. *See Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims.").

licensing agreements are relevant to issues relating to secondary considerations of nonobviousness. Defendant's arguments go to the weight of this evidence, which is the proper subject of cross examination. Third, references to the "presumption of validity" are relevant to issues of validity. Use of this phrase is not unfairly prejudicial because it is a correct statement of the law.

5. Defendant's sixth motion to preclude evidence or argument regarding pre-suit knowledge (Dkt. No. 283) is GRANTED.

Federal Rule of Civil Procedure 26(a)(1) requires the disclosure of the "each individual likely to have discoverable information . . . the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Parties who fail to comply with Rule 26(a)(1) become subject to a sanction under Rule 37(c)(1), which provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Here, Personal Web did not identify any evidence of pre-suit knowledge, including the May 15, 2006 letter form Brilliant Digital Entertainment, Inc. ("BDE"), until well after the close of fact discovery. Personal Web has not met its burden of showing that this late disclosure is either substantially justified or harmless. It is also no answer that IBM identified this letter in one of *its* interrogatory responses, because this is insufficient to put IBM on notice that *Personal Web* intended to rely on this letter as evidence of pre-suit knowledge. Further, even if Personal Web's late disclosure could be overlooked, the Court finds that the BDE letter is not relevant, as it does not relate to the '420 patent. Thus, exclusion would also be warranted on this basis.

6. Defendant's seventh motion to exclude from trial use of IBM's '257 patent for infringement purposes (Dkt. No. 280) is GRANTED.

IBM's '257 patent is not relevant to the issue of whether TSM infringes the '420 patent. Infringement is measured by comparing the elements of the asserted claim against the accused product. *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("Literal infringement requires that every limitation of the patent claim be found in the accused infringing device."). Whether certain claim elements are disclosed in the '257 patent has no bearing on

9

1    whether those claim elements are implemented in TSM.

2    　　　7.　　Defendant's motion to exclude certain opinions of Dr. Peter Reiher (Dkt. No. 288)
3    is GRANTED.

4    　　　Defendant's motion seeks to exclude preclude Dr. Peter Reiher from providing certain
5    opinions that are outside the scope of his report, including: (1) opinions that particular hardware
6    meet the hardware limitation of claim 166; and (2) indirect infringement.  As discussed above with
7    respect to Defendant's second motion *in limine*, Dr. Reiher did not provide opinions on either of
8    these topics in his report.  Accordingly, he his precluded under Rule 37(c)(1) from presenting
9    these opinions at trial.

10   　　　Rulings on the remaining pre-trial motions (Dkt. Nos. 269, 279, 285, 313) are
11   DEFERRED.  The parties shall be prepared to present argument on these matters at the Final
12   Pretrial Conference.

14   　　　**IT IS SO ORDERED.**

15   Dated: July 25, 2017

16   　　　　　　　　　　　　　　　　　　　　　　　_____
17   　　　　　　　　　　　　　　　　　　　　　　　EDWARD J. DAVILA
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

United States District Court
Northern District of California

10