UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES LLC, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                    Defendant. | Case No.  16-cv-01266-EJD<br><br>**SECOND ORDER RE: MOTIONS *IN LIMINE***<br><br>Re: Dkt. Nos. 269, 279, 285, 313 |

Presently before the Court is the balance of the parties' motions *in limine* and other pretrial orders.  Dkt. Nos. 269, 279, 285, 313.  Having considered the moving and responding papers along with the argument held at the Final Pretrial Conference, the Court rules as follows as to the remaining motions:

1.     Plaintiffs' first motion to exclude any reference to accused products, patents, or patent claims previously but no longer asserted in this litigation (Dkt. No. 269) is GRANTED IN PART and DENIED IN PART.  Defendant may not introduce that these patents, claims, and products were originally asserted by Plaintiffs in this case but later dropped.  Defendant may, however, refer to unasserted patents and accused products to provide background information about the parties or to identify patents that were subject to licenses that have been used in damages calculations.

Under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Under Federal Rule of Evidence 403, relevant evidence

1

can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Court finds that the fact that certain patents, claims, and products were originally asserted by Plaintiffs but have now been dropped are not relevant to any of the issues that remain to be tried.  First, infringement is measured by comparing the elements of the asserted claim against the accused product.  *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997) ("Literal infringement requires that every limitation of the patent claim be found in the accused infringing device.").  Thus, whether Plaintiffs have dropped certain patent claims has no relevance as to whether TSM infringes claim 166 of the '420 patent.  Second, willfulness turns on the egregiousness of an accused infringer's infringement of an *asserted* patent.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933, 195 L. Ed. 2d 278 (2016) ("Awards of enhanced damages . . . are . . . designed . . . for egregious infringement behavior. . . .  [C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.").  Thus, the fact that Plaintiffs have dropped certain patent claims has no bearing on whether Defendant's conduct with respect to the '420 patent was egregious.  Third, inducement requires "knowledge that the induced acts constitute patent infringement"—i.e., knowledge of infringement of the asserted patent.  *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  The dropped patent claims do not inform whether Defendant had specific knowledge of its alleged infringement of claim 166 of the '420 patent.  Finally, although certain unasserted patents may be relevant to damages if they are part of the licenses used in the damages calculations, the fact that these patents were originally asserted in this case is not.  Thus, the fact that certain patents, claims, and products were originally asserted but dropped should be excluded under Rule 401.

Further, even if this evidence were relevant, the Court finds that the probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury.  Introducing the fact that certain patents, claims, and products were dropped may permit the jury to draw the unfair inference that Plaintiffs' case is weak.  It may also mislead the jury, who is not accustomed to the fact that claims are routinely narrowed in patent infringement cases.  Thus, exclusion is also

United States District Court
Northern District of California

2

proper under Rule 403.

Nevertheless, the Court finds that the parties should not be entirely prohibited from mentioning patents or products that happen to not be asserted in this case. For example, introducing the fact that Plaintiff owns X patents or Defendant makes Y products may be helpful background information. In addition, the parties may wish to mention certain unasserted patents if they are subject to the licensing agreements used by damages experts. References to unasserted patents and products in this limited manner are relevant and not prejudicial. Accordingly, the Court will not exclude these usages.

2. Defendant's second motion to exclude from trial opinions not disclosed in expert reports (Dkt. No. 284) is, with respect to Dr. Akemann, DENIED AS MOOT. As discussed further below, Dr. Akemann's opinions are excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

2. Defendant's third motion to exclude from trial undisclosed infringement theories (Dkt. No. 279) is GRANTED.

Federal Rule of Civil Procedure 26(e) requires that a party "who has responded to an interrogatory . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Parties who fail to comply with Rule 26(e) become subject to a sanction under Rule 37(c)(1), which provides that: "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." In this district, the patent local rules "provide[] for a 'streamlined' mechanism to replace the 'series of interrogatories that defendants would likely have propounded' in its absence." *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760RMW(RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007).

Defendant moves to preclude Plaintiffs from pursuing untimely infringement theories at trial—namely, its indirect infringement theories. Patent Local Rule 3-1(d) requires "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." As the Court found at summary judgment,

Plaintiffs did not comply with this rule.  Dkt. No. 245 at 27 ("PersonalWeb's infringement

contentions make no mention of any indirect infringement theory, let alone provide any

'description of the acts of [IBM] that contribute to or are inducing that direct infringement'  As

such, they fail to comply with Patent Local Rule 3-1(d).").  To be sure, Plaintiffs' infringement

contentions provided information on how the "hardware" limitation of claim 166 was allegedly

infringed.  Dkt. No. 217-6 at 1-3.  However, this does not negate the fact that Plaintiffs'

contention that Defendant indirectly infringes—an interrogatory response which it was required to provide in

the form of patent local rule infringement contentions—is "information" within the meaning of

Rule 26(a) which it was required to disclose.  Thus, under Rule 37(c), Plaintiffs are precluded

from presenting this theory at trial unless they can show that this "failure was substantially

justified or is harmless."

On this point, Plaintiffs appear to argue that their failure was substantially justified and/or

harmless because (1) the E.D. Texas Patent Local Rules do not require explicit disclosure of

indirect infringement theories, Dkt. No. 303 at 5 n.4; and (2) its infringement contentions and/or

expert report provided information on how the "hardware" limitation was satisfied and pointed to

examples of how IBM promotes and advertises the use of TSM to its customers, Dkt. No. 303 at

3-6.  The Court finds neither of these persuasive.  First, as discussed in the Court's summary

judgment order, "[t]he fact that this case originated in the Eastern District of Texas does not immunize

[Plaintiffs'] shortcomings.  Once this case was transferred, this district's patent local rules governed

the case [and Plaintiffs] could have sought leave to amend [their] infringement contentions so that they

complied with the local rules of this district."  Dkt. No. 245 at 23-24.  Indeed, Plaintiffs' own actions

seem to admit this, as they moved to amend their infringement contentions after transfer to modify the

accused products and claims.  Dkt. No. 139.  They also could have included indirect infringement in

this request, but chose not to.  Second, providing information on the "hardware" limitation or IBM

customer materials[1] is not enough to remove the prejudice that Defendant suffered by not knowing

---

[1] Plaintiffs are correct that they have done this: both Plaintiffs' infringement contentions and
expert report provided information on how the "hardware" limitation of claim 166 was allegedly
infringed.  Dkt. No. 217-6 at 1-3; Dkt. No. 309-6 ¶¶ 65-67.  Plaintiffs' expert report also provided
examples of how IBM promotes and advertises the use of TSM to its customers.  *See, e.g.*, Dkt.

United States District Court
Northern District of California

1    Plaintiffs' specific indirect infringement allegations.  To be sure, Defendant was aware that Plaintiffs

2    accused it of indirect infringement in its complaint.  Dkt. No. 29.  This, however, is not enough.  A

3    defendant should not be left to read the tea leaves and guess as to the contours of a plaintiff's

4    infringement theories.  Because Plaintiffs forced Defendant to do precisely this, their failure to comply

5    with their Rule 26(a) obligations was not harmless.

6            3.        Defendant's motion to exclude the opinions of Dr. Michael Akemann (Dkt. No.

7    285) is GRANTED.

8            Federal Rule of Evidence 702 permits an expert to testify if: (a) the expert's scientific,

9    technical, or other specialized knowledge will help the trier of fact to understand the evidence or

10   to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

11   is the product of reliable principles and methods; and (d) the expert has reliably applied the

12   principles and methods to the facts of the case.  Read together, Rule 702 and *Daubert*, 509 U.S.

13   579, broadly require that an expert not only be qualified, but also that the expert's testimony be

14   reliable and relevant.

15           When faced with a challenge to an expert, "[t]he trial judge must perform a gatekeeping

16   function to ensure that the expert's proffered testimony" meets this standard.  *United States v.*

17   *Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010).  The role is a flexible one, such that the judge

18   is afforded "considerable leeway in deciding in a particular case how to go about determining

19   whether particular expert testimony is reliable."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

20   137, 152 (1999).

21           Defendant does not challenge Dr. Akemann's expertise or argue that his testimony is

22   unhelpful to the jury.  Instead, Plaintiffs argue that Dr. Akemann's testimony should be limited or

23   excluded because (1) he did not apportion the value of the '420 patent in the licensing agreements

24   he relied on; and (2) his calculations do not account for any use of "hardware."  Dkt. No. 286-4.

25           Defendant's first argument challenges Dr. Akemann's approach to apportioning the value

26   of the '420 patent from the portfolio patents that were the subject of the licenses he relied on.  In

27

28   _____

No. 309-6 ¶¶ 37-40.

United States District Court
Northern District of California

his report, Dr. Akemann did not perform any numerical calculations to apportion for the value of the '420 patent, but simply indicated that he included a "substantial downward adjustment" in his reasonable royalty assessment to account for apportionment:

> A substantial downward adjustment is indicated to account for additional patents licensed in the Data Storage Agreements relative to the Hypothetical Negotiation. The Data Storage Agreements license the Truename patent portfolio, not just the 420 patent. However, there are reasons to expect such an adjustment would not necessarily be too large. First, I understand that all of the Truename patents are related, at least in the sense that they all derive from single patent application. Second, some of the comparable agreements have field of use restrictions which I understand limit the use/value of some of the other patents in the portfolio to those licensees. Third, I understand from Mr. Bermeister that PersonalWeb has a preference for portfolio licenses.

Dkt. No. 309-8 ¶ 199.  The Court finds that Dr. Akemann's approach does not pass muster under Rule 702/*Daubert*.  Dr. Akemann uses nothing other than the three brief reasons quoted above to arrive at his conclusion that there should be a "substantial downward adjustment" that is "not necessarily . . . too large."  He provides no supporting citation or data, nor does he provide any explanation of how he took these reasons and determined that the adjustment should not be "too large" or what "too large" means numerically.  This does not meet Rule 702's requirement that expert opinions be based on "reliable principles and methods."  *Compare, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) ("Mr. Murtha's one-third apportionment to bring his royalty rate down from 6% per ODD to 2% per laptop computer appears to have been plucked out of thin air based on vague qualitative notions of the relative importance of the ODD technology."); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("[The damages expert] did not explain how much each [*Georgia-Pacific*] factor affected the rate. . . and he testified that almost all factors justified an increase in the applicable rate, a few were neutral in terms of their impact, and none justified a decreased rate.").  To be sure, in determining a reasonable royalty, "mathematical precision is not required." *Whitserve*, 694 F.3d at 31.  However, "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed."  *Id*.  Dr. Akemann fails explain (i.e., give any reliable basis upon which he reached the determination) how his three brief reasons translated into a "substantial downward adjustment" that is "not necessarily . . . too large" and

1    what that adjustment was.  As such, he falls short of this standard.

2           Further, it is hard to tell that Dr. Akemann even truly apportioned for the value of the '420

3    patent.  By indicating that his "substantial downward adjustment" is "not necessarily . . . too

4    large" but providing no further details (i.e., numerical analysis or even an estimate) of what this

5    adjustment is, it is possible that Dr. Akemann effectively did not apportion for the value of the

6    '420 patent.  This too would be grounds for exclusion.  *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*,

7    No. C 10-03561 WHA, 2011 WL 6055505, at *6 (N.D. Cal. Dec. 6, 2011) ("Dr. Cockburn did not

8    use the value of the patents to apportion infringer's profits, but instead apportioned the purchase

9    price of a broad license portfolio without any basis to opine on the value of the rest of that license

10   portfolio.").

11          Defendant's second argument urges that Dr. Akemann's opinions and testimony should be

12   excluded because his opinion is based only on IBM's sales of TSM software.  Dkt. No. 286-4 at 7-

13   9.  Because of this, Defendant argues, any opinion based on hardware sales should be excluded

14   because it would be speculative and also beyond the scope of Dr. Akemann's report.  *Id*.  The

15   Court agrees with Defendant.  Dr. Akemann's report only relies on IBM software sales.  *See* Dkt.

16   No. 309-8 ¶¶ 29-36.  Thus, any opinion by Dr. Akemann based on hardware sales is outside the

17   scope of his report.  Plaintiffs have not argued that this omission is substantially justified or

18   harmless so, pursuant to Rule 37(c)(1), Dr. Akemann will not be permitted to testify as to any

19   damages that are based on hardware sales.  Moreover, even if Rule 37(c)(1) did not apply, any

20   opinion Dr. Akemann would give on damages based on hardware sales would be speculative and

21   excluded under Rule 702/*Daubert*.  Thus, Dr. Akemann may not provide any damages opinion

22   based on hardware sales.

23          4.      Defendant's motion to strike witnesses and previously undisclosed theories from

24   witness list and pretrial statement (Dkt. No. 313) is GRANTED IN PART and DENIED IN

25   PART.

26          Federal Rule of Civil Procedure 26(a)(1) requires the disclosure of the "each individual

27   likely to have discoverable information . . . the disclosing party may use to support its claims or

28   defenses, unless the use would be solely for impeachment."  Federal Rule of Civil Procedure

United States District Court
Northern District of California

7

26(a)(2) requires that "[u]nless otherwise stipulated or ordered by the court," the parties' experts each provide a written report which contains "a complete statement of all opinions the witness will express and the basis and reasons for them."  Federal Rule of Civil Procedure 26(e) requires that a party "who has responded to an interrogatory . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Parties who fail to comply with Rule 26(e) become subject to a sanction under Rule 37(c)(1), which provides that: "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."

For the same reasons discussed with respect to Defendant's sixth motion *in limine* in the Court's First Order Re: Motions *in Limine*, Dkt. 343 at 9, Defendant's motion is GRANTED IN PART with respect to Plaintiffs' theories that Defendant was on notice of the True Name patent family as of May 2006, including the '420 patent, including with respect to indirect or willful infringement.  Plaintiffs are precluded from raising these theories through evidence or argument at trial.  However, the Court will not strike corresponding portions from the Joint Final Pretrial Statement.

For the same reasons discussed above with respect to Defendant's third motion *in limine*, Defendant's motion is GRANTED IN PART with respect to Plaintiffs' theories of indirect infringement.  Plaintiffs are precluded from raising these theories through evidence or argument at trial.  However, the Court will not strike corresponding portions from the Joint Final Pretrial Statement.

Defendant's motion is DENIED with respect to Plaintiffs' theories that IBM directly infringes claim 166 of the '420 patent when it: (1) uses TSM by installing it on hardware for testing and for its hosting service; (2) makes TSM software and places the infringing code routines on computer hardware; (3) licenses TSM to customers for use on IBM hardware; (4) offers to license TSM for use on IBM hardware; and (5) licenses TSM and makes it available for download from IBM servers.  Both Plaintiffs' infringement contentions and expert report disclose a theory of direct infringement. Dkt. No. 217-6; Dkt. No. 309-6 ¶ 159.  Both documents also provide

United States District Court
Northern District of California

information on how the "hardware" limitation of claim 166 is allegedly infringed.  Dkt. No. 217-6 at 1-3; Dkt. No. 309-6 ¶¶ 65-67.  Plaintiffs' expert report also contains references to licensing and hosting, which Defendant never moved to strike as outside the scope of Plaintiffs' infringement contentions.  Dkt. No. 309-6 ¶¶ 65-67.  Accordingly, the Court will not strike these theories under Rules 26(a) and 37(c).  The Court nevertheless reminds that parties that, as discussed with respect to Defendant's second motion *in limine* in the Court's First Order Re: Motions *in Limine*, Dkt. 343 at 5-7, Plaintiffs' experts are not permitted to testify beyond the scope of their report, including citing to more specific examples of IBM hardware, hosting, and licensing.

For the same reasons discussed with respect to Defendant's fourth motion *in limine* in the Court's First Order Re: Motions *in Limine*, Dkt. 343 at 8, Defendant's motion is DENIED with respect to Plaintiffs' theories that deduplication features need not be activated by the end user for IBM to infringe and that claim 166 is drawn to capability.  The Court finds claim 166 distinguishable from *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 987 (Fed. Cir. 2009), where the claims at issue were directed to a physical candle tin and the claim "language clearly specifie[d] a particular configuration in which the protrusions must be 'resting upon' the cover."  Instead, claim 166 presents a similar situation to those in *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) and *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010)—which also involved computer-related claims.  Similar to those cases, the language of claim 166 requires "hardware, including a processor, and software . . . to . . . determine . . . and selectively permit . . . ."  This language simply requires that the software as written and installed on the hardware already include the functionality of "determin[ing] . . ." and "selectively permit[ting]," regardless of whether it is activated.  Thus, the Court will allow argument that is consistent with these principles.

At the hearing, Defendant expressed a concern that the Court's ruling will raise issues under *O2 Micro International, Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), which held that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."  The Court disagrees.  To the extent the parties have a fundamental dispute regarding activation, the Court's view is clear.  Should the

United States District Court
Northern District of California

parties stray from this view at trial, the Court can insulate the jury from this dispute through instruction or other remedial measures.

**IT IS SO ORDERED.**

Dated: July 26, 2017

EDWARD J. DAVILA
United States District Judge